**Billy McKAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9811–CR–899.

Court of Appeals of Indiana.

Aug. 5, 1999.

Sara R. Matticks, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Billy McKay ("McKay") filed an interlocutory appeal from the trial court's denial of his petition for writ of habeas corpus.

### Issue

McKay presents one issue for review, which we restate as whether the trial court erred in denying McKay's petition for writ of habeas corpus in violation of his right to a speedy trial under Ind.Crim. Rule 4(B).

### Facts and Procedural History

For the sake of clarity, the relevant procedural history is stated as follows:

**April 24, 1998:** The State charged McKay by information with four counts: Count I, conspiracy to commit robbery as a Class B felony; Count II, robbery as a Class B felony; Count III, criminal confinement as a Class B felony; and Count IV, carrying a handgun without a license as a Class A misdemeanor.

**May 7, 1998:** The State added an habitual offender charge to the charges pending against McKay.[1]

**June 5, 1998:** The initial hearing was held. McKay moved for a speedy trial pursuant to Crim. R. 4(B)(1).[2]

**June 16, 1998:** A pre-trial conference for McKay and two other defendants, Steven Bewley ("Bewley") and Mitchell Haynes ("Haynes") was held.[3] Bewley requested that the trial be scheduled in September of 1998 to allow time for discovery to be completed. The trial court stated, "I'm kind of at the mercy of Mr. McKay's speedy trial request," and scheduled the trial for July 27, 1998, "which [was] within 70 days of Mr. McKay's speedy trial request." A pre-trial conference was also scheduled for July 22, 1998.

**July 22, 1998:** A pre-trial conference was held. McKay and Bewley appeared with counsel; counsel for Haynes was not present. While explaining the proceedings to Haynes, the trial court stated,

> [A]pparently there is at least one case that is set for trial on the same day that your case is. And that case is older than this case. The way it works is, the older cases get tried before the new ones. That means that your case and that case [are] set on the same day [and] the Court will automatically move this case to make room for the other.... What I can do is go ahead and leave it on the Court calendar.... I've had a chance to talk to all lawyers from both sides about this and apparently there is a consensus that all the parties believe, uh, expecting that's what's going to happen next week, the case will be congested off. So, um, I'll go ahead and leave it on the calendar for next week. We are mindful of your motion for speedy trial, Mr. McKay, so I don't want you to think the Court doesn't recognize the fact you've made that request. But just preparing everybody for the possibility that your case is going to get moved because only one case can be tried, okay?

**July 27, 1998:** Due to a congested calendar, the court continued the trial, noting that the case of *State v. Smith & Braeziel* was the "first choice case," and rescheduled McKay's trial for September 28, 1998. A final pre-trial conference was scheduled for September 23, 1998.

**July 28, 1998:** McKay objected to the continuance, stating that no other trials were heard by the court on July 27, 1998; that the trial date of September 28, 1998, was past the seventy-day limit of Crim. Rule 4; and

---

1. In 1983 and 1985, McKay was convicted of burglary, and in 1996 he was convicted of criminal recklessness.

2. Ind.Crim. Rule 4(B)(1) provides:

 If any defendant in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

3. The record is not clear on when the matters of Bewley and Haynes were joined with McKay.

that counsel for McKay would be unavailable on September 28, 1998, due to a scheduling conflict with another previously scheduled jury trial.

**July 30, 1998:** McKay's trial was rescheduled for August 24, 1998.

**August 14, 1998:** The seventy-day period from the time that McKay first requested a speedy trial on June 5, 1998, expired.

**August 19, 1998:** A pre-trial conference was held. The court and the State expressed concern that the other two defendants who were not present at this conference may not be ready for trial, but left the trial as scheduled for August 24, 1998.

**August 21, 1998:** Once again, the court continued the trial, due to a congested court calendar, citing the jury trial of *State v. Jackson* as the first choice case, and rescheduled McKay's trial for October 5, 1998. Another pretrial conference was scheduled for September 30, 1998.

**September 4, 1998:** McKay filed a "Motion to Dismiss with Prejudice and Discharge" and a memorandum in support of his motion to dismiss. McKay asserted that the delay of his trial had not been due to a congested court calendar because no other trials were heard on either July 27, 1998, or August 24, 1998. McKay also objected to the October 5, 1998, trial date.

**September 14, 1998:** McKay's motion to discharge was denied.

**September 30, 1998:** A pre-trial conference was held. Bewley and Haynes requested and were denied continuances. McKay filed a "Motion to Reconsider Ruling on Motion to Discharge and Request for Hearing." During the pre-trial conference, McKay requested a hearing to examine court personnel on the record regarding the status of cases that caused his case to be reset by the court. The hearing was scheduled for October 2, 1998.

**October 2, 1998:** At this hearing, McKay presented the testimony of Barbara Woodson ("Woodson"), the bailiff who had been working in Marion County Criminal Court Five, on July 27, 1998, and August 24, 1998. On direct exam, Woodson testified as follows:

Q: And were you the bailiff in Criminal Court Five back on July 27th of this year?

A: Yes, I was.

Q: And on the date of July 27th how many cases were set for trial that morning?

A: ... Andrew Smith set and then, Mr. Braeziel which are co-defendants. And then we had the case which you're on with the co-defendants; Haynes, Bewley and McKay.

Q: And on the other matters that were set that morning, or the other case with the co-defendants, had there been a Criminal Rule 4 motion or what we call a fast and speedy motion filed in that particular case?

A: Not that I know of. It's not marked on the file....

Q: And on the morning of July 27th did any case actually go to trial before the Judge or by jury that morning?

A: It did not....

Q: You were also bailiff in this court on August 24th of this year; is that right?

A: Yes, I was.

Q: To your knowledge on that date was the McKay matter set to go to trial on that date also?

A: Yes, it was.

Q: ... Was there an order issued stating that the McKay matter was continued due to court congestion on that date?

A: Yes, there was.

Q: Do you recall what case was set for first choice on that date?

A: Eric Jackson.

Q: And in looking at the file do you have knowledge as to whether [or] not it was a fast and speedy motion filed in that matter?

A: There was not.

Q: There was not? And did that case go to trial on that date?

A: No, it didn't.

Q: Did any matter go to trial on that date?

A: No.

On cross-examination, Woodson testified as follows:

Q: Ms. Woodson, on July 27th, 1998 were you aware of the fact that the Braeziel and Smith trial that all parties came in the morning of that trial prepared and ready to go but that one defendant agreed to testify against the other one and that was the reason for the trial going off. Were you aware of that?

A: Yes, I am.

McKay again moved for a discharge and was denied. In denying McKay's motion, the court noted,

I think the record adequately establishes that we had other matters that were older matters that were before this court. And Crim[.] Rule 4 was adequately filed on Mr. McKay as a co-defendant with two other defendants who have not requested speedy trials. We have done everything we can to make sure these cases get tried as quickly as we possibly can considering the court's calendar.

Also on this date, McKay's trial was again continued due to a congested court calendar resulting from the jury trial of *State v. Bellamy* and was rescheduled for November 16, 1998. A final pretrial conference was scheduled for November 10, 1998. McKay objected to the continuance of the trial and filed a request for certification for an interlocutory appeal and stay of proceedings pending the outcome pursuant to Ind. Appellate Rule 4(B)(6).[4]

**October 6, 1998:** McKay's petition to certify for an interlocutory appeal was denied.

**November 4, 1998:** McKay petitioned the court to issue a writ of habeas corpus asserting that he was being held in violation of Crim. R. 4(B).

**November 10, 1998:** McKay's petition for writ of habeas corpus was denied.

**November 12, 1998:** McKay petitioned this court to accept jurisdiction of an interlocutory appeal pursuant to Ind. Appellate Rule 2(C).[5]

**November 13, 1998:** This Court accepted jurisdiction and granted a temporary stay of McKay's trial set for November 16, 1998.

### Discussion and Decision

 The Sixth Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution both protect the right to a speedy trial. U.S. CONST. amend. VI; IND. CONST. art. 1, § 12. McKay filed a petition for a writ of habeas corpus seeking relief for an alleged violation of his right to a speedy trial. The trial court denied the petition from which McKay now appeals. As McKay notes in his brief, the purpose of a writ of habeas corpus is used to determine the lawfulness of custody or detention of the defendant and may not be used to determine collateral matters not affecting the custody process. *Pruitt v. Joiner*, 182 Ind.App. 218, 395 N.E.2d 276, 278 (1979), *trans. denied.* A defendant is entitled to a writ of habeas corpus if he or she is unlawfully incarcerated and is entitled to immediate release. *Moore v. Smith*, 181 Ind.App. 81, 390 N.E.2d 1052, 1053 (1979).

 At his initial hearing on June 5, 1998, McKay requested a speedy trial. Under Ind. Crim. Rule 4(B), the State has an affirmative duty to try an incarcerated defendant who requests a speedy trial within seventy days. *Austin v. State*, 682 N.E.2d 1287, 1288 (Ind. 1997); *Attebury v. State*, 703 N.E.2d 175, 177 (Ind.Ct.App.1998). If the defendant is not brought to trial within seventy days, the court must discharge the defendant unless the delay is caused by the defendant or is due to a congested court calendar. *Austin*, 682 N.E.2d at 1288. Crim. R. 4(B)(1) thus

---

4. App. R. 4(B)(6) provides in pertinent part that

[A]ppeal from interlocutory orders shall be taken to the Court of Appeals ... if the trial court certifies and the court on appeal or a judge thereof finds on petition that: (b) [t]he order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case.

5. App. R. 2(C) provides that

Any party seeking an appeal or review by the Supreme Court or the Court of Appeals, shall file a notice of appeal with the Clerk of the Supreme Court, Court of Appeals and Tax Court. The filing of a notice of appeal will satisfy the requirement to file an appearance pursuant to Appellate Rule 2.1.

vests authority in trial courts to exceed deadlines in the event of court congestion. *Id.*

The record shows that McKay was charged on June 5, 1998. Barring any delays attributable to McKay or resulting from the congestion of the courts, the State was required to bring him to trial by August 14, 1998. According to McKay, he is being held in violation of Crim. R. 4(B)(1) because he requested a speedy trial and was not brought to trial within seventy days. He contends that he is now entitled therefore to release. McKay argues that he has been denied his right to a speedy trial "under the guise of court congestion when in fact no such congestion existed." He contends that the court abused its discretion each time it continued his case. We review each continuance separately.

### A. Continuance of Trial Scheduled for July 27, 1998

■ McKay's first contention is based on the court's continuance of his trial scheduled for July 27, 1998, due to a congested calendar. He asserts that the court impermissibly reset his trial from July 27, 1998, to September 28, 1998 because no congestion actually existed. The record contains the following order dated July 27, 1998,

Comes now the Court on its own motion pursuant to Criminal Rule 4 and finds that there is a congestion of the Court[']s calendar as a result of [the] jury trial, *State of Indiana v. Smith & Braeziel,* and vacates the trial setting in this cause set for July 27, 1998 and ... resets this cause for trial by jury on the next earliest available date which is September 28, 1998.

Our review of a trial court's finding of court congestion is well established. In *Clark v. State,* our supreme court stated,

Upon appellate review, a trial court's findings of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court. However, a defendant may challenge that finding, by filing a Motion for Discharge and demonstrating that, at the time the trial court made its decision to postpone trial, the finding of congestion was factually or legally inaccurate. Such proof would

be prima facie adequate for discharge, absent further trial court findings explaining the congestion and justifying the continuance. In the appellate review of such a case, the trial court's explanations will be accorded reasonable deference, and a defendant must establish his entitlement to relief by showing that the trial court was clearly erroneous.

*659 N.E.2d 548, 552 (Ind.1995).*

In *Clark,* the supreme court held that the trial court erred in denying the defendant's motion for discharge in violation of Crim. R. 4(B). *Id.* On the day of Clark's trial, the court issued an order continuing the case for over four months "due to congestion of Court's calendar." *Id.* at 550. The bailiff later testified that no jury trial had been held on that date and that no jurors had been summoned to appear that day. *Id.* at 550. The supreme court concluded this was sufficient evidence that no court congestion actually existed and that the defendant's request for a speedy trial had therefore been violated. *Id.* at 552.

As did the defendant in *Clark,* McKay presented the testimony of the bailiff, Woodson, who had been working in Marion County Criminal Court Five on both July 27, 1998, and August 24, 1998. Nevertheless, McKay's situation is distinguishable from *Clark.* Woodson testified that although no trial occurred on July 27, 1998, the parties involved in the case of *State v. Smith & Braeziel* arrived at trial expecting proceedings to begin that day. The case did not go to trial on July 27, 1998, only because one of the defendants unexpectedly decided that morning to testify against the other, causing the trial to be postponed. Additionally, in *Clark,* the trial court rescheduled the defendant's trial "due to congestion of Court's calendar." Here, although the trial court need not have contemporaneously explained or documented its findings, the court noted that *State v. Smith & Braeziel* was the reason for the congestion.

Additionally, McKay asserts that "[a]t the time the continuance was issued the court was well aware that the only other matter on the calendar would not in fact be tried" be-

cause one of the defendants had decided to testify against the other. Nevertheless, McKay has failed to provide us with any evidence of this, and we find nothing in the Record to support this determination.

Moreover, the record indicates that prior to July 27, 1998, the court had informed McKay that there was a problem with the court's calendar being particularly congested and warned him at the July 22, 1998, pretrial conference that his case was most likely going to be "congested off" of the court's calendar. While explaining the proceedings to Haynes, the court stated, "I've had a chance to talk to all lawyers from both sides about this and apparently there is a consensus that all the parties believe that what's going to happen next week [is that] the case will be congested off." The court further indicated to McKay that it was aware of his request for a speedy trial, but could only try one case at a time, and because *State v. Smith & Braeziel* had been on the calendar, it would be tried first.

Next, McKay argues that *State v. Smith & Braeziel* was not a Crim. R. 4 priority case and therefore, his case should have been the "first choice." In essence, he urges this court to adopt a bright-line rule that all Crim. R. 4 cases must be tried before any other case that is not a Crim. R. 4 priority. We decline to accept this proposal.[6] The right to a speedy trial is a "fundamental principal of constitutional law" that has long been zealously guarded. *Castle v. State,* 237 Ind. 83, 143 N.E.2d 570, 572 (1957). This Court is mindful that in order for the meaning of the rule not to be eviscerated, it is essential that courts honor requests made for speedy trials by scheduling trial dates within the time prescribed by the rule. As our supreme court stated in *Clark,*

> [I]t must be assigned a meaningful trial date within the time prescribed by the rule, if necessary superseding trial dates

previously designated for civil cases and even criminal cases in which Criminal Rule 4 deadlines are not imminent. We recognize, however, that emergencies in either criminal or civil matters may occasionally interfere with this scheme. Similarly, there may be major, complex trials that have long been scheduled or that pose significant extenuating circumstances to litigants and witnesses, which will, on rare occasions, justify application of the court congestion or exigent circumstances exceptions.

659 N.E.2d at 551–552.

■■■ Nevertheless, assessing the cause of delay involves a factual determination appropriately to be determined by the trial court. *Crosby v. State,* 597 N.E.2d 984, 988 (Ind.Ct.App.1992). Here, the trial court made a factual determination that the court was congested due to the case of *State v. Smith & Braeziel.* The reasonableness of any delay must be judged in the context of the particular circumstances of the case, and absent an abuse of discretion, the trial court's decision will not be disturbed. *Scholar v. State,* 626 N.E.2d 547, 549 (Ind.Ct.App. 1993). McKay presented testimony that this was not a Crim. R. 4 priority case; nevertheless, this alone is insufficient to establish that the court's finding of congestion was clearly erroneous.

■■■ Finding the trial calendar to be congested on July 27, 1998, the court rescheduled McKay's trial for September 28, 1998. McKay objected, and the trial court again rescheduled McKay's trial, this time for August 24, 1998, approximately ten days outside of the Crim. R. 4(B) seventy-day requirement. We turn then to the question of whether McKay's failure to object to the trial setting rescheduled for August 24, 1998, which was beyond the seventy-day requirement of Crim. R. 4(B)(1), constituted a waiver of his request for a speedy trial. It is well

---

**6.** In *Baker v. State,* the court noted that in criminal cases, although the right of an accused to a speedy trial stands higher than similar rights of civil litigants, this does not mean that civil settings must always give way to criminal settings requiring speedy trials. 590 N.E.2d 1126, 1128 (Ind.Ct.App.1992) (defendant's speedy trial rights were not violated where trial was continued twice due to congestion; first decision to continue trial where civil trial had already been in progress for four weeks and required additional twelve days to conclude; and at time second continuance was issued calendar revealed substantial number of domestic, criminal, and juvenile matters scheduled for two days with nothing scheduled for two days thereafter.)

established that a defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period. *Townsend v. State*, 673 N.E.2d 503, 506 (Ind. Ct.App.1996); *James v. State*, 622 N.E.2d 1303, 1306 (Ind.Ct.App.1993); *see Jackson v. State*, 663 N.E.2d 766 (Ind.1996). If the defendant fails to object, he is deemed to have acquiesced to this trial date and has abandoned his request for a speedy trial. *Townsend*, 673 N.E.2d at 506.

■ McKay contends that his failure to object to the August 24, 1998, trial date did not waive his right to a speedy trial. Relying on *Townsend*, McKay contends that his acceptance of the August 24, 1998, trial date was not unreasonable because even though it was beyond the seventy-day limit, it was close enough to seventy-days so as not to make the trial date objectionably unreasonable. *See* 673 N.E.2d at 507. However, McKay misconstrues our holding in *Townsend*.

In *Townsend*, this Court held that the defendant had acquiesced to a trial date set outside the speedy trial period when he failed to object to a trial setting on the seventy-first day, one day outside of the Crim. R. 4(B) limit, and thus, abandoned his request for a speedy trial. *Id.* at 506. In *Townsend*, the defendant raised the alternative argument that he was denied effective assistance of counsel, in that his counsel failed to object to the scheduling of the trial on the seventy-first day. In that case, we noted that to succeed on a claim of ineffective assistance of counsel, the appellant needed to show that among other things, the performance of the counsel fell below an objective standard of reasonableness. *Id.* Our holding that "it is not objectively unreasonable for counsel to accept a firm trial setting beyond but close to the seventy day date," was limited to addressing the claim of ineffective assistance of counsel and not the proposition for which McKay uses it in his brief. In both *Townsend* and *James*, we held that the defendants had abandoned their early trial motions where they failed to object to trial settings scheduled just one day outside of the seven-

ty-day period under Crim. R. 4(B). *Townsend*, 673 N.E.2d at 506; *James*, 622 N.E.2d at 1306. Therefore, we hold that McKay's failure to object to the trial setting of August 24, 1998, ten days beyond the seventy-day period, also constituted an abandonment of his request for a speedy trial. Assuming *arguendo* that McKay's failure to object was not a waiver of his right to a speedy trial, we will address the other issues raised by McKay on the merits.

■ Additionally, McKay implies that because the court was able to reschedule his trial from September 28, 1998, to August 24, 1998, the court did not give him the next available trial date on the court calendar. We recognize that court dockets are extremely crowded. Trials are often scheduled weeks, if not months in advance, and circumstances often change after a trial date has been set. The August 24, 1998, date may not have been available on July 27, 1998, for a variety of reasons, including unavailability of court personnel or lack of space. Moreover, alternate jury trials are frequently scheduled for the same date in anticipation that some may be pled or continued out. McKay has failed to provide us with sufficient evidence to indicate that at the time his trial was rescheduled, he was not given the next available date on the court's docket.

### B. Continuance of Trial Scheduled for August 24, 1998, and October 5, 1998

■ On August 21, 1998, the court rescheduled McKay's August 24, 1998, trial for October 5, 1998, again due to a congested court calendar. This time, the court noted that the congestion resulted from the jury trial of *State v. Eric Jackson*. McKay again relies solely on Woodson's testimony to establish that *State v. Jackson* was not a Crim. R. 4 priority case, nor did it actually go to trial on August 24, 1998. He asserts that similar to the July 27, 1998, trial, the August 24, 1998, trial was also continued under the guise of court congestion when no congestion actually existed. This trial date was rescheduled under substantially the same circumstances as the July 27, 1998, setting and for the aforementioned reasons, we conclude

that the finding of congestion by the trial court was not clearly erroneous.

### C. Continuance of Trial Scheduled for October 5, 1998

 Additionally, on October 2, 1998, McKay's October 5, 1998 trial setting was continued a third time due to a congested court calendar resulting from the jury trial of *State v. Bellamy* and rescheduled for November 16, 1998. In his brief, McKay admits that he has presented us with no evidence regarding the third continuance and states that "since the first and second continuances were issued in absence of true calendar congestion the third trial setting was already in violation of [C]rim[.][R]ule 4." This argument clearly falls short of proving that the trial court erred in continuing the October 5, 1998, trial due to court congestion.

To give Crim. R. 4 meaning, cases "must be assigned a meaningful trial date within the time prescribed by the rule." *Clark*, 659 N.E.2d at 551. Nevertheless, the purpose of Crim. R. 4 is to ensure early trials, not to allow defendants to manipulate the means designed for their protection and permit them to escape trials. *Ritchison v. State*, 708 N.E.2d 604, 607 (Ind.Ct.App.1999), citing *State Ex Rel. O'Donnell v. Cass Superior Court*, 468 N.E.2d 209, 211 (Ind.1984). Therefore, we hold that McKay acquiesced to a trial setting outside of the seventy-day requirement of Crim. R. 4(B) and thereby abandoned his request for a speedy trial. Additionally, McKay has failed to prove that the trial court's findings of congestion were factually or legally inaccurate.

### Conclusion

For the foregoing reasons, the trial court's decision to continue McKay's trial beyond the seventy-day speedy trial period was reasonable, and McKay's speedy trial rights were not violated. Therefore, we affirm the trial court's decision to deny McKay's petition for a writ of habeas corpus.

BAKER and RUCKER, JJ., concur.