**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ANDREW C. EGGERS**
Eggers Woods
Franklin, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON S. ALIFF | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A05-1401-CR-4 |
| | ) | |
| STATE OF INDIANA | ) | |
| | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1209-FC-98

**August 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jason S. Aliff appeals his conviction for escape as a class C felony. Aliff raises three issues which we revise and restate as:

I. Whether the trial court improperly denied his motion for discharge under Ind. Criminal Rule 4(B);

II. Whether the trial court abused its discretion when it admitted evidence that he fled from the back of a police vehicle; and

III. Whether the evidence is sufficient to sustain Aliff's conviction for escape as a class C felony.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 28, 2012, Johnson County Sheriff's Deputy Kerry Hamilton who had a dog in a cage in the back of his vehicle was dispatched to a domestic disturbance to what was later determined to be Aliff's residence which he shared with his parents. Upon arriving in the area of the scene, other deputies on the scene advised Deputy Hamilton that Aliff had walked away and was intoxicated. Deputy Hamilton began looking for Aliff and found him walking in the middle of Clyde Drive, which is in the general vicinity of his residence. Deputy Hamilton pulled his vehicle into a driveway so as not to be a traffic hazard and yelled at Aliff to stop. Deputy Hamilton was concerned for Aliff's safety because he was walking down the middle of a dark road at night.

Deputy Hamilton exited his vehicle and asked Aliff what was going on, and Aliff said that he and his parents were in an argument over his drinking. Deputy Hamilton and Aliff conversed in a driveway, and Deputy Hamilton concluded that Aliff was intoxicated based upon his red and glassy eyes, odor of an alcoholic beverage coming about his

2

person, and his unsteady balance. Deputy Hamilton asked Aliff if he would perform some field sobriety tests, and Aliff agreed and failed the field sobriety tests.

Deputy Hamilton told Aliff that he was going to be placed under arrest for public intoxication, handcuffed him, placed him in the right rear passenger side of his police vehicle, and seatbelted him. Deputy Hamilton gave a "soapbox speech" and said "there's a dog behind you, it's going to bark. If you do anything bad I have a magical button. I'm going to push this magical button. The dog's going to come out. We're both going to get bit." Transcript at 38. Aliff appeared to understand what Deputy Hamilton told him. Deputy Hamilton then closed the door, walked around the rear of his vehicle, and went to the driver's side of his vehicle.

At some point, Deputy Hamilton's supervisor arrived, and Deputy Hamilton told him that he was going to take Aliff to the Johnson County Jail. Aliff then opened the right rear passenger door of Deputy Hamilton's vehicle, jumped out of the vehicle, and ran as fast as he could with his arms handcuffed behind his back. Deputy Hamilton yelled, "[h]ey, stop," pursued Aliff, and tackled him to the ground. Id. at 43. Deputy Hamilton placed Aliff in a headlock, and Aliff was actively kicking and "trying to get away." Id. at 44. When Deputy Jason Wienhorst came to assist, Aliff stated that he was stupid and "I give up." Id. at 44.

On September 5, 2012, the State charged Aliff with Count I, resisting law enforcement as a class A misdemeanor; and Count II, public intoxication as a class B misdemeanor. On September 7, 2012, the State filed a motion to amend the information to add a count, the court granted the motion on September 10, 2012, and on September

3

27, 2012, the State amended the information by adding Count III, escape as a class C felony.[1]

On October 31, 2012, Aliff requested a continuance, and the court granted the request and scheduled a jury trial for February 26, 2013. On January 2, 2013, Aliff requested a continuance, and the court granted the request and rescheduled the jury trial for February 26, 2013.

On January 7, 2013, Aliff filed a motion for fast and speedy trial under Criminal Rule 4.[2] On January 14, 2013, the court scheduled a jury trial for March 12, 2013. On January 30, 2013, Aliff requested a continuance, and the court granted the request. The trial by jury remained scheduled for March 12, 2013.

On February 1, 2013, Aliff filed a motion to dismiss. On February 13, 2013, the State filed a response to Aliff's motion to dismiss, and the court held a hearing on Aliff's motion.[3] On February 19, 2013, the court denied Aliff's motion to dismiss.

Prior to March 12, 2013, Aliff requested a continuance, and the court granted the request and scheduled the jury trial for June 11, 2013. On June 11, 2013, the court continued the jury trial due to a congested calendar and rescheduled the jury trial for July 30, 2013. On July 17, 2013, Aliff requested a continuance. On July 24, 2013, the court rescheduled the jury trial to August 6, 2013, on its own motion. On August 1, 2013, Aliff filed a motion to continue the jury trial. The court granted the motion and on September

---

[1] The record does not contain a copy of any charging information.

[2] The record does not contain a copy of this motion.

[3] The record does not contain a copy of the transcript of the February 13, 2013 hearing. Aliff's notice of appeal requested a transcript of only the jury trial.

10, 2013, the court rescheduled the jury trial for January 14, 2014. On September 30, 2013, Aliff filed a motion for a fast and speedy trial.[4] On October 2, 2013, the court granted Aliff's motion and rescheduled the trial for November 19, 2013.

Meanwhile, on July 29, 2013, Aliff filed a motion to suppress all evidence discovered as a result of the search and seizure and argued that the stop and questioning violated the Indiana Constitution and the United States Constitution. On August 20, 2013, he filed an argument in support of the motion to suppress. On August 29, 2013, the State filed a response to the motion, and on September 10, 2013, the court denied Aliff's motion to suppress.

On November 18, 2013, the State filed a motion to dismiss Count I, which the court later granted. On November 19 and 20, 2013, a jury trial commenced. At the beginning of the trial, Aliff, by counsel, moved to dismiss the case pursuant to Indiana Criminal Rule 4 and asked that the court incorporate the hearing held on February 13, 2013. The court incorporated the earlier hearing and denied the motion. During Deputy Hamilton's testimony, Aliff renewed his objection based upon a violation of his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Aliff also requested that the prior hearing be incorporated into the record. The court incorporated the prior hearing and overruled the objection. During Deputy Hamilton's testimony, the court asked a juror's question of: "Was there any circumstances why [Aliff] couldn't walk on the side of the road instead of the middle of the road? Example, rainwater, hole in the road, or animal blocking?" Transcript at 176. Deputy Hamilton

---

[4] The record does not contain a copy of this motion.

5

stated: "No." Id. Deputy Hamilton also testified that Aliff started moving to the edge of the road because of "the engine noise is what I'm assuming." Id. at 178.

The jury found Aliff not guilty of public intoxication as a class B misdemeanor and guilty of escape as a class C felony. The court sentenced Aliff to five years in the Department of Correction.

## DISCUSSION

We first note that the State did not file an appellee's brief. The obligation of controverting arguments presented by the appellant properly remains with the State. Bovie v. State, 760 N.E.2d 1195, 1197 (Ind. Ct. App. 2002). When the appellee does not submit a brief, the appellant may prevail by making a *prima facie* case of error—an error at first sight or appearance. Id. However, we are still obligated to correctly apply the law to the facts of the record to determine if reversal is required. Id.

## I.

The first issue is whether the trial court improperly denied Aliff's motion for discharge under Ind. Criminal Rule 4(B). "The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution guarantee the right to a speedy trial. The provisions of Ind. Criminal Rule 4 implement these protections." Wilkins v. State, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009) (citing Clark v. State, 659 N.E.2d 548, 551 (Ind. 1995)), trans. denied. Ind. Criminal Rule 4(B)(1) provides, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is

6

> otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

"The purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." Williams v. State, 631 N.E.2d 485, 486 (Ind. 1994), reh'g denied. Restraint on liberty is one policy underlying Rule 4(B), but it is not the only policy. Poore v. State, 685 N.E.2d 36, 40 (Ind. 1997). "There is also the anxiety and humiliation that can accompany public accusation." Id. "These considerations are unrelated to whether the accused is incarcerated on other grounds at the time the speedy trial is demanded." Id. "Equally importantly, a prompt trial enables a defendant to make his or her case before exculpatory evidence vanishes or becomes stale." Id.

"The onus is on the State, not the defendant, to expedite prosecution." Jackson v. State, 663 N.E.2d 766, 769 (Ind. 1996). A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Id. A movant for an early trial must maintain a position which is reasonably consistent with the request that he has made. Wilburn v. State, 442 N.E.2d 1098, 1103 (Ind. 1982). "[I]t is incumbent upon defendant to object at the earliest opportunity when his trial date is scheduled beyond the time limits prescribed by Ind. R. Crim. P. 4(B)(1)." Smith v. State, 477 N.E.2d 857, 861-862 (Ind. 1985). "This requirement is enforced to enable the trial court to reset the trial date within the proper time period." Dukes v. State, 661 N.E.2d 1263, 1266 (Ind. Ct. App. 1996). "A defendant who permits the court, without objection, to set a trial date outside the 70-day limit is considered to have waived

7

any speedy trial request." Stephenson v. State, 742 N.E.2d 463, 488 (Ind. 2001), cert. denied, 534 U.S. 1105, 122 S. Ct. 905 (2002).

Aliff argues that oral motions are sufficient unless the presiding judge requires that an oral motion be submitted in writing and that this case is "downright confusing" as to whether the court required a written motion. Appellant's Brief at 13. He also acknowledges that filing subsequent motions for an early trial abandons any previous such motion, but argues that "an investigation into the record seems to indicate attempts by the trial counsel and [Aliff] to merely clear up the record and re-assert the original oral motion, not abandon it." Id. He points to his oral motion for a fast and speedy trial on October 31, 2012. Without citation to the record, he contends that, while the clerk's record is devoid of this motion, he and the State repeatedly referred to it in their subsequent motions and he made repeated attempts to maintain that the original oral motion for a fast and speedy trial was still valid and before the court.

We observe that the record does not contain a copy of the transcript of the pretrial conference at which Aliff alleges he made an oral motion for a fast and speedy trial. In Aliff's February 1, 2013, motion to dismiss, he alleged:

> Comes now [Aliff], by counsel . . ., and requests the Court to enter an order dismissing this case, herein support of this Motion defendant states that *on October 31, 2012, Judge Kim Van Valer indicated to [him] that he must file a Motion for Speed [sic] Trial in writing* and set date of trial on January 9, 2013. This is contrary to law. State failed to try defendant within time provided in CR 4.

Appellant's Appendix at 17 (emphasis added). Based upon Aliff's motion to dismiss, he appears to concede that the court indicated to him that he had to file a motion for a speedy trial in writing. See Ind. Trial Rule 7(B) ("Unless made during a hearing or trial,

8

*or otherwise ordered by the court*, an application to the court for an order shall be made by written motion. The motion shall state the grounds therefor and the relief or order sought.") (emphasis added); McGowan v. State, 599 N.E.2d 589, 591 (Ind. 1992) (holding that "under T.R. 7(B), the motion could have been made orally except for the fact the magistrate who was arraigning appellant instructed him that he must make his motion in writing. Thus, appellant's situation came under that portion of the rule which says 'or otherwise ordered by the court.'").

The chronological case summary ("CCS") indicates that Aliff filed a motion for a fast and speedy trial under Criminal Rule 4 on January 7, 2013. Based upon Rule 4(B), Aliff was to be brought to trial within seventy days or by March 18, 2013. On January 14, 2013, the court scheduled a jury trial for March 12, 2013.[5] On February 1, 2013, Aliff filed a motion to dismiss. This motion to dismiss was premature. On February 19, 2013, the court denied Aliff's motion to dismiss. We cannot say that this denial was erroneous given that the seventy-day time period had not expired.

Aliff appears to focus on the trial court's denial of his February 1, 2013 motion to dismiss. To the extent that he challenges the court's denial of his other motions to dismiss, we will address them. Prior to March 12, 2013, the date of the previously scheduled trial, Aliff requested a continuance, and the court granted the request and

---

[5] We acknowledge that the CCS entry dated January 14, 2013, states:

> On January 9, 2013, State appears. Defendant appears in person and by counsel . . . . On defense's motion, Fast and Speedy is withdrawn. On defense's motion Fast and Speedy requested, same Granted. Case is[ ]set for Final Pretrial on January 30, 2013 at 9:00 a.m. and Fast and Speedy trial by Jury on March 12, 2013 at 8:30 a.m.

Appellant's Appendix at 6. Based upon this CCS entry, it appears that Aliff may have withdrawn his January 7, 2013 motion for a fast and speedy trial and filed another motion. However, even assuming that Aliff did not withdraw his motion for a fast and speedy trial, we cannot say that reversal is warranted.

rescheduled the jury trial for June 11, 2013. This extended the seventy-day period by ninety-one days to June 17, 2013.[6] (Cumulative extension (hereinafter, "C.E.") 91 days). On June 11, 2013, the court continued the jury trial due to a congested calendar and rescheduled the jury trial for July 30, 2013. Aliff does not challenge the finding of congestion, and this extended the seventy-day period by forty-nine days to August 5, 2013.[7] (C.E. 140 days). On July 17, 2013, Aliff requested a continuance. On July 24, 2013, the court rescheduled the jury trial to August 6, 2013, on its own motion, and Aliff did not object to the scheduling of the trial outside the seventy-day time limit. Under the circumstances, we conclude that Aliff waived his speedy trial request. See Goudy v. State, 689 N.E.2d 686, 691 (Ind. 1997) (addressing defendant's argument relating to Ind. Criminal Rule 4(B) and holding that "defendant waived his earlier speedy trial request by acquiescing in the setting of an omnibus date, and by necessary implication, a trial date, beyond the seventy day limit permitted by Criminal Rule 4(B)(1)"), reh'g denied; Wright v. State, 593 N.E.2d 1192, 1195 (Ind. 1992) (holding that "it was reasonable to assume that [the defendant] had abandoned his request for a speedy trial" where the defendant "waited nearly a month before filing an objection to the later trial date"), cert. denied, 506 U.S. 1001, 113 S. Ct. 605 (1992), abrogated on other grounds by Fajardo v. State, 859 N.E.2d 1201 (Ind. 2007); Smith, 477 N.E.2d at 862 (holding that "[i]nsofar as no timely objection was made by defendant to the trial date being scheduled beyond the seventy-day time limit, defendant's request for an early trial date is deemed waived and therefore

---

[6] This represents the delay between March 12, 2013, and June 11, 2013.

[7] This represents the delay between June 11, 2013, and July 30, 2013.

defendant is not entitled to a discharge under Ind. R. Crim. P. 4(B)(1)"); Jacobs v. State, 454 N.E.2d 894, 898 (Ind. Ct. App. 1983) (holding that the assertion of a speedy trial violation was untimely when it was raised three days after the court rescheduled the trial date).

We will also address Aliff's motion for a fast and speedy trial filed on September 30, 2013. After he filed a motion to continue the jury trial on August 1, 2013, and after the court granted the motion on September 10, 2013, and rescheduled the jury trial for January 14, 2014, Aliff filed a motion for a fast and speedy trial on September 30, 2013.[8] Based upon Rule 4(B), Aliff was to be brought to trial within seventy days or by December 9, 2013. On October 2, 2013, the court granted Aliff's motion and rescheduled the trial for November 19, 2013. At the beginning of the trial on November 19, 2013, Aliff moved to dismiss the case pursuant to Indiana Criminal Rule 4. Aliff's motion to dismiss was premature and his right under Ind. Criminal Rule 4(B) had not been violated. Consequently, we cannot say that the trial court erred.

## II.

The next issue is whether the trial court abused its discretion when it admitted evidence that Aliff fled from the back of the police vehicle. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504

---

[8] The record does not contain a copy of this motion.

11

(Ind. 2001). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied. Although Aliff originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied; Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

Aliff argues that the stop, questioning, and arrest were unlawful because Deputy Hamilton lacked the probable cause necessary to make such an arrest. He contends that the fact he was walking down a residential road at night does not meet the third element to the charge of public intoxication of endangering his life or the life of another person, that the arrest was unlawful, and any and all evidence or events that occurred after the unlawful arrest are fruit of the poisonous tree and should not have been admitted. He asserts that "[i]f, as the deputy would have the court believe, walking in the street endangers your life; any pedestrian (having had a few adult beverages) after sunset, crossing any thoroughfare would be guilty of public intoxication." Appellant's Brief at 9. He argues that the jury's finding of not guilty on the public intoxication charge solidifies the fact that he was not acting in such a way as to endanger his own life or that of another, and contends that this case is very similar to Stephens v. State, 992 N.E.2d 935 (Ind. Ct. App. 2013).

The Fourth Amendment guarantees:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Clark v. State, 994 N.E.2d 252, 261 (Ind. 2013). Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis. Id. Nonconsensual encounters do, though, and typically are viewed in two levels of detention: a full arrest lasting longer than a short period of time, or a brief investigative stop. Id. The former of these requires probable cause to be permissible; the latter requires a lower standard of reasonable suspicion. Id.

Probable cause to arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. Clark v. State, 808 N.E.2d 1183, 1192 (Ind. 2004). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. Id. It is grounded in notions of common sense, not mathematical precision. Id. The evidence required to establish guilt is not necessary for probable cause for an arrest to exist. Roberts v. State, 599 N.E.2d 595, 598 (Ind. 1992).

While Aliff mentions the "stop" in his brief, he does not argue that Deputy Hamilton did not have reasonable suspicion to stop him. Rather, Aliff focuses his

13

argument on whether Deputy Hamilton had probable cause to arrest him. Thus, we will address whether Deputy Hamilton had probable cause to arrest Aliff.

Ind. Code § 7.1-5-1-3 governs public intoxication and provides:

Subject to section 6.5 of this chapter, it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9), if the person:

    (1)    endangers the person's life;
    (2)    endangers the life of another person;
    (3)    breaches the peace or is in imminent danger of breaching the peace; or
    (4)    harasses, annoys, or alarms another person.

While Aliff's statement of facts indicates that he was "walking down an adjacent road" and his argument section indicates that he was "walking down a residential road at night," Aliff does not indicate that Deputy Hamilton testified that he was walking down the middle of the road. Appellant's Brief at 4, 6. Specifically, Deputy Hamilton testified that Aliff was walking "[d]irectly in the center portion of the road," that Clyde Drive was not a dead end residential road, that the housing addition sees traffic, and that people use the road as a shortcut. Transcript at 20. Deputy Hamilton also testified that he was concerned for Aliff's safety because he was walking down the middle of a dark road at night and he believed Aliff was in danger, that in his opinion the behavior of walking down the middle of the road at night was a dangerous activity, and that Aliff could be struck or the person striking him could be injured or veer off the road and hit something else. Deputy Hamilton also testified that he conversed with Aliff and concluded that Aliff was intoxicated based upon his red and glassy eyes, odor of an alcoholic beverage coming about his person, and his unsteady balance. Deputy Hamilton asked Aliff if he

14

would perform some field sobriety tests, and Aliff agreed and failed the tests. We conclude that Deputy Hamilton had probable cause to arrest Aliff for public intoxication. We cannot say that the trial court abused its discretion in admitting evidence that Aliff fled from the police vehicle.

To the extent that Aliff cites Stephens, we find that case distinguishable. In that case, Danny Stephens became drunk at home, was assaulted by his niece's boyfriend, and left the house when the police failed to arrest the boyfriend. 992 N.E.2d at 936. He went to a public place and called the police, admitting that he was drunk and requesting that they take him to jail so that he would not have to return home. Id. The State charged him with public intoxication as a class B misdemeanor, and a trial court convicted him as charged. Id. On appeal, Stephens challenged the sufficiency of the evidence to support a finding that he either endangered himself or others, breached or was in imminent danger of breaching the peace, or harassed, annoyed, or alarmed another person. Id. at 938.

This court held that "the General Assembly added these elements to the public intoxication statute in 2012, making it no longer a crime simply to be intoxicated in public" and that the "addition of these elements promotes public policy encouraging inebriated persons to avoid creating dangerous situations by walking, catching a cab, or riding home with a designated driver rather than driving while intoxicated." Id. at 938. We observed that Stephens was initially in a private place where he had every right to be intoxicated, that he sought to extricate himself from the situation by walking to a public place, calling the police, stating that he was drunk, and requesting that he be taken to jail rather than returning to the dangerous situation at home. Id. We concluded that the

15

evidence was insufficient to support Stephens's conviction for public intoxication. Id. at 939. Unlike in Stephens, Deputy Hamilton testified that Aliff was walking directly in the center portion of the road at night, that drivers use the road, that he was concerned for Aliff's safety, and that Aliff could be struck or a person striking him could be injured. Under the circumstances, we find this case to be distinguishable from Stephens.

III.

The next issue is whether the evidence is sufficient to sustain Aliff's conviction for escape as a class C felony. Aliff argues that the necessary element of fleeing from lawful detention was not met because his arrest for public intoxication was unlawful. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

Ind. Code Section 35-44.1-3-4 governs escape and provides that "[a] person . . . who intentionally flees from lawful detention commits escape, a Class C felony."[9] Ind. Code Section 35-31.5-2-186 defines "lawful detention" as:

(1)    arrest;
(2)    custody following surrender in lieu of arrest;

* * * * *

---

[9] Aliff and the chronological case summary cite Ind. Code Section 35-44-3-5 as the relevant statute governing escape. However, that statute was repealed effective July 1, 2012, and replaced by Ind. Code Section 35-44.1-3-4. Accordingly, we cite Ind. Code Section 35-44.1-3-4.

16

(9)    custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10)   any other detention for law enforcement purposes.[10]

Aliff argues that Deputy Hamilton lacked sufficient probable cause to lawfully detain him and had no knowledge of any facts or circumstances that would cause him to believe he had committed or was committing a criminal offense. He contends that Deputy Hamilton had no basis for placing him under arrest for public intoxication and in the back of his squad car, therefore creating the situation of an illegal arrest. Because we conclude that Deputy Hamilton had probable cause to arrest Aliff, we cannot say that an illegal arrest occurred. Consequently, we conclude that the evidence is sufficient to sustain Aliff's conviction for escape as a class C felony.

## CONCLUSION

For the foregoing reasons, we affirm Aliff's conviction for escape as a class C felony.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

---

[10] Aliff cites Ind. Code § 35-41-1-18(a), but this section was repealed by Pub. L. 114-2012, §§ 103 to 132, effective July 1, 2012.